**UNITED STATES of America, Plaintiff,**

v.

**Jerry VALLE and Jorge Gochis, Defendants.**

**No. 89–080–CR.**

United States District Court, S.D. Florida.

July 19, 1989.

Frank Tamen, Asst. U.S. Atty., Miami, Fla., for U.S.

Rick Goldman, Miami, Fla., for defendant Valle.

William Norris, Miami, Fla., for defendant Gochis.

## MEMORANDUM OPINION

SCOTT, District Judge.

The sentencing of these two Defendants presents an unusual factual setting, as well as a first impression legal issue under the Sentencing Guidelines.

### I. BACKGROUND

Jerry I. Valle planned a Wells Fargo heist in Miami resulting in the loss of over 1.6 million dollars. Jorge Gochis assisted him in the execution of the crime and the disposition of the proceeds. Following investigation by the FBI and Wells Fargo, the Defendants were apprehended in Puerto Rico without recovering the proceeds. To date, the 1.6 million dollars have not been recovered, with the exception of approximately $50,000.00.

The Defendants have pled guilty to the indictment charging them with conspiracy to commit bank larceny, 18 U.S.C. § 371

and bank larceny, 18 U.S.C. § 2113(b), and thus face a maximum statutory sentence of fifteen years in prison. After the investigation and preparation by the Department of Probation of the Presentence Investigation Report, a sentencing hearing occurred in which all parties were provided an opportunity to present evidence and assert their positions. The Court ruled on all objections culminating in a guideline range for Valle of 37 to 46 months and for Gochis of 30 to 37 months imprisonment.

The Government now urges the Court to depart upward from the guidelines and impose the maximum statutory sentence against each Defendant. The Government argues "that the Defendants have carried out an elaborate, carefully planned and executed theft, and escaped with a fortune in cash." Government Motion, p. 2. The Government asks this Court to invoke Guideline Rule § 5K2.0, and find that "an aggravating circumstance exists that was not adequately taken into consideration by the guidelines." Government Motion, p. 2. Succinctly distilled, the Government states:

> The guidelines for white collar offenses thus do not take into account a situation in which an enormous sum of cash is stolen in a single act and is then concealed intact for later enjoyment by the perpetrators. Yet this factor is the most salient feature of the present case. The defendants obviously have stashed their loot, and as soon as they are released from prison will be free to start spending and enjoying it.

> The defendants are thus in a position to cynically exploit the guidelines. They expect to serve a short term of less than three calendar years in a minimum security institution complete with recreation facilities and opportunities for work release and then come out and be millionaires. Government Motion, p. 3.

The Defendants respond that the "quantity of cash taken is hardly a factor of a kind, or to a degree not adequately addressed by the Sentencing Commission." The Defendants cite to Section 2B1.1. Additionally, the Defendants argue that the measure of "either harm to the victims or benefit to the defendant" is adequately considered. Therefore, "the ground for departure called for by the [Government] is subsumed in the Sentencing Commission Guidelines." Defendants' Memorandum, 1–2. Finally, Defendants point to *United States v. Uca*, 867 F.2d 783, 786 (3d Cir. 1989) for the proposition that, "[n]o departure is permitted on the basis of circumstances adequately taken into consideration by the Sentencing Commission." With the issue joined, we commence our discussion with the legal question of departure under the Sentencing Guidelines.

## II. DEPARTURE—LEGAL STANDARD

The Sentencing Reform Act authorizes departure from the guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). In determining whether a factor was adequately considered, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the sentencing commission." *Id.*

The Commission recognized that this statutory mandate means that "in principle," it could have prevented the courts from using a particular factor as a basis for departure by specifying that it had adequately considered it. However, the Commission chose not to do so. Instead:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

Sentencing Guidelines, Chapter One, Part A, page 1.6.

The Commission took this position for two reasons. First, the Commission recognized that it would be impossible to foresee

and capture the entire range of potentially relevant conduct. Thus, with the "initial set of guidelines," the Commission did not attempt to define the universe of offenses. *Id.* at page 1.7. As the Fifth Circuit explained:

> Sentencing under the guidelines is not ... an exact science. Justice cannot be meted out according to mathematical formulas. The universe of potential factors that might affect the seriousness of a given offense is to broad to be refined to a mechanistic approach. The sentencing guidelines are not intended to cover all contingencies or rigidly bind district judges. The guidelines do not impose the sentence, they provide a framework for a district court to impose a sentence. "The sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case. The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences." S.Rep. No. 225, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3235.

*United States v. Mejia–Orosco,* 867 F.2d 216, 219 (5th Cir.1989).

Moreover, the Commission expected to learn from the experience of the district courts in applying the guidelines. "By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted." Sentencing Guidelines, Chapter One, Part A, page 1.7.

The second reason that the Commission chose not to impose severe constraints on departure powers was its belief that the courts would not in fact frequently depart from the guidelines. Because of the particularity of the existing guidelines, the Commission anticipated that departures would occur only in "unusual cases outside the range of the more typical offenses for which the guidelines were designed." *Id.*

Accordingly, the Commission formulated the following policy statement for unguided departures:

> The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing.... [T]he court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (*e.g.* as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Sentencing Guidelines, Policy Statement § 5K2.0 (grounds for departure).

The Eleventh Circuit has not yet had the opportunity to address the scope of departure powers under the sentencing guidelines.[1] We note that there is some tension between the Commission's apparent deference to district courts in the exercise of sentencing discretion, and the Commission's expectation that departures occur only in unusual cases. *See United States v. Ryan,* 866 F.2d 604, 609 (3d Cir.1989) (noting the "inherent tension" between these goals). However, other circuits have read the Commission's policy statement as vesting the district court with "wide discretion" in deciding whether to depart from the guidelines. *See United States v. Sturgis,* 869 F.2d 54, 56 (2d Cir.1989) (*quoting United States v. Correa–Vargas,* 860 F.2d 35, 37 & 40 (2d Cir.1988)); *United States v. Diaz,* 874 F.2d 43 (1st Cir.1989) (in review-

---

1. The Court's independent research has disclosed only one Eleventh Circuit decision on the application of the sentencing guidelines, apart from those cases raising purely constitutional issues. In *United States v. Spraggins,* 868 F.2d 1541 (11th Cir.1989), the Eleventh Circuit upheld a "substantial departure" from the guide-lines because "the district court reasonably could conclude that criminal history category IV more adequately reflects the seriousness of Spraggins' criminal history and the likelihood of recidivism than does category III." *Id.* at 1544. The ground for departure was explicitly provided in the sentencing guidelines. *See* § 4A1.3.

ing a departure case, the court of appeals "must nonetheless defer, within broad limits, to the trial judge's intimate familiarity with the nuances of a given case."); *United States v. Ramirez–DeRosas,* 873 F.2d 1177, 1180 (9th Cir.1989) (affirming "650 percent increase over the guideline maximum"); *Ryan,* 866 F.2d at 610 (sentencing court has a "substantial amount of discretion" in determining whether to depart).

With these teachings in mind, the Court now turns to the novel issue presented by the case before us.

## III. DISCUSSION

This is a unique case factually, even by Miami standards. On December 21, 1988, Jerry Valle, a Wells Fargo employee, staged a well-planned heist of an armored truck. Although the crime was carefully planned, the method was simple. Valle waited for the day when the truck was carrying an unusually large sum of money, 1.6 million dollars in cash, and then, while on duty, he simply drove the truck away from his unsuspecting co-workers.

Valle and his accomplice, Jorge Gochis, fled from Miami to New York, bringing with them between eight and twelve suitcases filled with cash. The Defendants registered at a hotel under an assumed name, John Wisdom, and an unwitting desk clerk helped them carry the suitcases to their room. Ultimately, the Defendants returned to Miami, leaving five empty suitcases behind. In Miami, they unloaded a dozen suitcases into a rented storage facility in a local warehouse.

When FBI agents descended upon Valle at his hideout in Puerto Rico, Valle stalled for time. While the agents were waiting outside, Valle was burning bank records. By the time the agents noticed the smoke and forced open the door, it was too late. The evidence had already been destroyed.

Back in Miami, FBI agents arrived at the warehouse and found it empty, except for a small cardboard note which read, "Suckers." In subsequent testimony, Special Agent D'Amico told the grand jury, "I assume that may have been meant for me." *See* Grand Jury Testimony of Mark D'Amico, March 2, 1989.

The contents of the armored truck were never recovered. The Defendants have stashed the proceeds of the crime, and they refuse to disclose the location. They plan to be millionaires upon their release from prison. The Defendants have obviously made a calculated decision—if they have to spend some time in prison, they are going to make it worth their while.

The Sentencing Guidelines do not address this unusual scenario. Defendants cannot usually expect to have the fruits of the crime waiting for them at the end of their prison time. They do not ordinarily expect to keep the proceeds of the crime.

The Court recognizes that the Defendants' sentence under the guidelines is computed according to the value of the stolen property. However, this does not mean that the Defendants have the option of retaining the stolen cash. Yet this would be the result if we were to accept the Defendants' position. The Defendants have no reason to turn over the proceeds to the Government if their failure to do so will not be regarded as an aggravating circumstance.

To hold otherwise would be to permit the Defendants to exploit the criminal justice system and disprove the old adage, "Crime doesn't pay." Such a result would hardly be consistent with the intent of Congress to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a). Instead, others would be motivated to commit similar crimes and hide the money, knowing that even if they are caught, they will be free to spend the money once they leave prison.

The Commission did not consider the aggravating circumstance present in this case, but it is our obligation to do so. The Defendants cannot be permitted to profit from their crimes at the expense of the victim and society. They must disgorge the proceeds of crime, or face the consequences. This is an elemental principle of justice.

Fortunately, the guidelines do not tie our hands in this case and we are free to impose a just punishment that fits the crime.

Indeed, that is our Congressional mandate. *See* 1984 U.S.Code Cong. & Admin. News 3182, 3235 ("The sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case.").

### IV. CONCLUSION

The Sentencing Commission did not foresee cases in which the Defendants plan to exploit the letter of the law to their financial advantage. It did not anticipate the audacity of Defendants like Jerry Valle and Jorge Gochis. A sentence imposed under the guidelines would be unjust. Under these circumstances, it is our duty to depart upward from the guidelines. Only a maximum statutory sentence will thwart the Defendants' attempt to defeat the system.

Accordingly, it is the judgment of the Court that Jerry Valle and Jorge Gochis are hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of fifteen (15) years each. If the Defendants have a change of heart and decide to turn over the money to the Government, we will entertain a motion for reduction of sentence.

DONE and ORDERED.