USA,

v.

**Martyn MERRITT, Defendant.**

**No. 90 CR 767 (JSM).**

United States District Court,
S.D. New York.

Oct. 8, 1991.

Baruch Weiss, New York City, for U.S.

Roger Bernstein, New York City, for Martyn Merritt.

Ronald Saffner, New York City, for AMG Service.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARTIN, District Judge:

The defendant in this case has pleaded guilty to one count of a 12–count indictment. The charge to which he entered his plea was a conspiracy to commit fraud which involved the submission of false bills of lading pursuant to which defendant received $936,000. The payment was made pursuant to an Agency for International Development [AID] program to supply needed foodstuffs to the country of Sudan. In return for the $936,000, the defendant and his associates were supposed to ship and deliver high-quality powdered non-fat milk. In fact, the product that defendant supplied was not non-fat milk but rather a "replacer" sometimes used in animal feed, not fit for human consumption. The report of defendant's expert states:

> "The solubility, taste, odor, scorched particles and appearance were quite below that normally found in Grade A skim powder. The taste and odor were unpleasant."

Defendant's plea of guilty was made pursuant to a plea agreement with the Government contained in a letter dated May 31, 1991. In that letter, the parties stipulated to certain facts and Guidelines analysis pursuant to which they agreed that the offense level should fall somewhere within the range of 15 and 17 points. Each party reserved the right to dispute whether the defendant should be given a 2–point credit for acceptance of responsibility, or alternatively, the Government reserved the right to argue that any downward adjustment for acceptance of responsibility should be offset by a corresponding upward adjustment for obstruction pursuant to U.S.S.G. § 3C1.1. The agreement further provides:

> "In arguing for offense level of 17 as opposed to 15, the Government is free to raise all arguments which, in its view, indicate an absence of acceptance of responsibility, and, in addition, to raise all arguments which support its contention that the defendant engaged in obstruction pursuant to § 3C1.1."

Although the agreement provided that neither party would seek a departure from the Guidelines, both parties recognized "that neither the Court nor the Probation Department are bound by the foregoing Guidelines Stipulations/Analysis...."

Upon receipt of the pre-sentence report and written submissions by the defendant and the Government, the Court advised counsel that it would not impose sentence on the date then scheduled, but would meet with the parties to discuss sentencing issues. At a conference held on August 16, 1991, the Court advised counsel that a review of the materials on file with the Court suggested that the defendant was attempting to retain the proceeds from his crime and may have misrepresented to the Probation Department the nature of his relation to Broadview Development Ltd. ("Broadview"), a corporation which had owned the home in which defendant was living and which had received the proceeds from the sale of that home in 1990. The Court therefore directed a hearing be held at which the Government was to produce all available evidence as to the disposition of the proceeds of the bill of lading which

defendant's company had received as well as all evidence in the Government's possession relating to the ownership of Broadview.

The hearing ordered by the Court was held on September 26, 1991. At the outset of the hearing, defense counsel objected to the Government's participation in such a hearing, asserting that it was inconsistent with the representation contained in the plea agreement that the Government would not seek a departure from the Guidelines. The Government responded that the evidence which it would be presenting at the hearing was relevant to the questions left open in the plea agreement, to wit, whether the appropriate offense level was 15 or 17 points and also where within that range the Court should impose sentence. Defense counsel agreed to stipulate that the Court could impose sentence at the high end of the range, level 17, and could also impose as restitution the full amount obtained by plaintiff's corporation without any offset for the amount defendant allegedly paid to the supplier of the replacer. Defense counsel, therefore, urged that it was improper for the Government to participate in the hearing because to do so would be a violation of the plea agreement which the Government was bound to honor, under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). At that point, the Court directed the Assistant U.S. Attorney to present to the Court all of the evidence which the Government had available concerning the disposition of the proceeds of the fraud and the ownership of Broadview.

Having reviewed the evidence presented as well as the submission of the parties, the following constitute the findings of fact of the Court with respect to the issues raised relating to the defendant's sentence.

First, the Court finds that the Government did not violate the plea agreement by participating in the hearing at the direction of the Court. As noted above, the plea agreement expressly recognized that neither the Court nor the Probation Department was bound by any agreement with respect to the Guidelines calculation.

The defendant did not and could not contend that the materials submitted to the Court prior to the August 16, 1991 conference constituted a violation of the plea agreement since that agreement specifically recognized that the Government would be free to submit all evidence and arguments indicating an absence of acceptance of responsibility and obstruction of justice by the defendant. Nothing could be more relevant on the issue of acceptance of responsibility than evidence that the defendant was attempting to secrete assets necessary to make restitution of the amount he received by fraud. Thus, all of the evidence submitted by the Government was clearly relevant to an issue which they had every right to present.

From August 16 onward the Government was operating not only pursuant to its rights under the plea agreement but also under a direction from the Court to make available evidence which the Court deemed material to the sentencing decision. The defendant's agreement to stipulate to the most severe sentence possible under the agreement did not deprive the Court of the power and duty to direct the United States Attorney to present evidence which the Court deemed relevant to the sentencing decision.

■ The hearing focused on three specific issues, the first being whether the defendant engaged in an obstruction of justice prior to the indictment. In support of that claim, the Government points to a fax purportedly from Mr. van der Beld, the supplier of the product shipped to the Sudan, which stated: "We hereby acknowledge full and final settlement and we accept the responsibility of settlement with other suppliers as agreed." The Government contends that this fax is a fabrication since Mr. van der Beld denied ever sending the fax and specifically denied that defendant's corporation, AMG Services, had ever paid for the product in question. In support of its contentions, the Government originally submitted a faxed message from Mr. van der Beld to the Agency for International Development in which he denied ever having sent the fax at issue as well as other

documents indicating that, at or about the time of the fax at issue, van der Beld was in fact asserting that the shipment had not been paid for. At the hearing, the Government presented an affidavit from Mr. van der Beld in which he swears that Mr. Merritt and his company agreed to pay $660,-000 to his company, Traco, for the powdered milk, but that no such payment was ever made.

Another issue related to this disputed payment involves a letter dated May 8, 1991 which Mr. Merritt apparently caused to be sent out on the stationery of the "Maritime Bureau of Investigations" which asked for confirmation that the product had been paid for. While the official looking stationery with the title "Maritime Bureau of Investigations" obviously was designed to mislead the recipient of the letter into believing that they were responding to some official Government inquiry, that fact alone would not warrant a finding that the defendant had attempted to obstruct justice. If, in fact, no payment had ever been made, however, the attempt to obtain a statement that falsely represented that payment had been made would in fact be an obstruction of justice.

The second issue raised at the hearing is closely related to the first and that is whether Mr. Merritt is attempting to retain the proceeds of his fraudulent activity by secreting at least $670,000 of the proceeds derived from this fraudulent activity (an amount only $10,000 more than the $660,-000 that was to be paid to the supplier). At the hearing the Government presented a series of documents which traced the proceeds from the fraud received by Merritt and his company into accounts controlled by Mrs. Merritt who was her husband's business associate. The paper trail ends with a $670,000 deposit in Bank Worms on the Island of Jersey. As will be demonstrated later, the Island of Jersey is also the location of Broadview, which defendant and his wife controlled.

The evidence presented at the hearing was more than sufficient to establish that Mr. Merritt and his company never paid for the replacer product that was shipped to the Sudan. At the hearing defense counsel asserted that the Court should not apply a preponderance of the evidence test, but that argument is flatly rejected by the Second Circuit's decision in *U.S. v. Ibanez*, 924 F.2d 427 (2d Cir.1991). Indeed, even if the Court were to agree with counsel that clear and convincing evidence is required, the Court would find the proof at the hearing met that standard.

The paper trail leaves no doubt that the $660,000 that was supposed to be used to pay for the replacer produce ended in an account under the control of Mrs. Merritt, the defendant's business associate. This fact, coupled with the failure of the defense to produce any business record of defendant's corporation reflecting a payment to the supplier, would alone be sufficient to satisfy the Court that no payment was ever made and that Mr. Merritt is simply attempting to retain the proceeds of his fraud. Coupled with the affidavit from Mr. van der Beld attesting to the fact that no payment has been made, the evidence becomes overwhelming. While defense counsel has challenged receipt of the affidavit on the basis that it is hearsay, his argument is again directly contrary to the holding of the Second Circuit in *U.S. v. Ibanez, supra.* Here the fact that Mr. van der Beld was willing to submit an affidavit to support his prior faxed transmission to the AID investigators would alone provide sufficient evidence of reliability to justify the Court's reliance upon it. The statements of Mr. van der Beld are also corroborated by the documentary evidence showing the funds under the control of the Merritts, as well as computer records from Mr. Merritt's company subsequent to the alleged transfer which do not reflect the payment of this amount. Although the defense submitted an affidavit from an accountant for Mr. Merritt's company suggesting reasons why this computer record might not be accurate, no evidence contradicting the facts reflected on the report were submitted.

Thus the Court finds that Mr. Merritt engaged in obstruction of justice when he submitted a false document to the Government, to wit, the alleged fax confirming

that Traco had been paid for the replacer, and when he attempted to obtain by use of the Maritime Service Bureau letter a false statement that the payment had been made. The Court further finds that Mr. Merritt continues to have control over $670,000 of the proceeds, which he is attempting to hide so that it may not be used to pay restitution.

The final issue addressed at the hearing involved the ownership of Broadview, a corporation that owned the home in which Mr. and Mrs. Merritt resided until the property was sold in 1990. The evidence at the hearing indicated that all decisions relating to the disposition of the property were made by Mr. or Mrs. Merritt. In addition, the corporate documentation of Broadview from the island of Jersey, although showing Jersey residents as shareholders, clearly indicate that the people in control of Broadview were Mr. and Mrs. Merritt. Some of the corporate documentation is signed by Mrs. Pawlowski, Mrs. Merritt's mother. Her stipulated testimony, however, was that she had no knowledge of the corporation although she did from time to time sign documents for Mr. and Mrs. Merritt.

In view of the overwhelming evidence presented by the Government that Broadview was in fact a corporation controlled by the Merritts, the Court finds that Mr. Merritt deliberately attempted to mislead the Probation Department concerning Broadview and provided false and fraudulent information to the Probation Department concerning his financial condition by not reflecting the proceeds that Broadview received from the sale of the house.

Paragraph 85 of the presentence report indicates that Mr. Merritt told the probation officer that he had no financial interest in this corporation. At the hearing, counsel for Mr. Merritt represented that Mr. Merritt told the probation officer that he believed that he had a moral right to some of the proceeds of the sale since he had been making payments on the house. Subsequent to the hearing, the Court contacted Kenneth Greenblatt, the probation officer, who advised the Court that in his conversa-

tion with Mr. Merritt concerning his home at 87 Broadview, Mr. Merritt clearly conveyed the impression that Broadview was a totally unrelated entity with whom he had an arms-length relationship. The evidence introduced at the hearing clearly demonstrates that this was false and the Court finds that there was an attempt to mislead the probation officer in this regard.

On the basis of the above facts, the Court makes the following findings with respect to the Guidelines calculation:

1. A 2–point increase for obstruction of justice is clearly warranted in light of the efforts made to obstruct the investigation of the defendant by the false claim that the suppliers had been paid for the replacer.

2. The defendant should be denied a 2–point reduction for acceptance of responsibility. Although the defendant has admitted participating in the crime at issue and pleaded guilty, factors which would ordinarily warrant a 2–point reduction for acceptance of responsibility, he has falsely stated in his submission to the Court that AMG retained only $90,000 of the $936,000 proceeds. Additionally, he has continued to insist that the fraudulent document which he caused to be submitted to the U.S. Attorney's office indicating that van der Beld agreed that Traco had been paid for the replacer is genuine despite the clear evidence to the contrary. In light of the above and the stipulations of the parties in open court as to other factors that must be taken into consideration in making the offense level computation, the Court concludes that the appropriate offense level in this case is 18, which provides a Guideline range of imprisonment of 27 to 33 months.

The record also suggests that an upward departure might be appropriate because of the existence of the following factors which are "of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines...." U.S.S.G. § 5K2.0.

1. The extent of the obstruction of justice. In this case, the defendant has engaged in substantial obstruction of justice both before and after his plea of guilty.

The policy statement with respect to grounds for departure states:

"The Court may depart from the Guideline even though the reason for the departure is taken into consideration in the Guidelines (*e.g.*, has a specific defense characteristic or other adjustment), if the Court determines that in light of unusual circumstances the Guideline level attached to the factor is inadequate."

U.S.S.G. § 5K2.0. In the circumstances of this case, the Court is considering adding an additional 2 points because of the extent and duration of the defendant's attempt to obstruct these proceedings.

2. Adjustment for damage to public welfare. Facts in this case demonstrate that defendant's conduct substantially undermined a program to provide vitally needed foodstuffs to the country of Sudan. Even the defendant's expert indicated that the product supplied by the defendant had an unpleasant taste and odor as well as a poor appearance. Although the defendant's expert testified that the product would not cause harm to health if ingested, he left little doubt that no one would willingly ingest it. Thus, the defendant provided a product that was not, in any meaningful sense, fit for human consumption. Section 5K2.14 indicates that an upward adjustment may be warranted "if national security, public health or safety was significantly endangered...." While the extent of the danger to public health arising from the fact that the people of Sudan were deprived of needed food was not as great as would have existed if the product had been toxic, the Court believes that considerations of the public welfare impact of this crime may justify an upward departure of at least 1 point. In addition, a 1-point upward departure may be appropriate because this crime represented a serious disruption of a governmental function. Here, the defendant not only obtained money supplied by the Agency for International Development through fraudulent conduct but obstructed the purpose of a governmental program which was to provide needed foodstuffs to the people of Sudan.

Finally, the Court believes that a substantial upward departure is justified by the fact that the evidence presented at the hearing clearly demonstrates that the defendant is trying to retain the proceeds of his crime. In *U.S. v. Valle*, 929 F.2d 629 (11th Cir.1991), 716 F.Supp. 1452 (S.D.Fla. 1989), the Court upheld an upward departure to 180 months where the Guideline range was 37 to 46 months for one defendant and 30 to 37 months for the other. The Court's reasoning in *Valle* is equally applicable here. As the Court in *Valle* noted:

We agree with the district court that this wilful continuing scheme to profit from their illegal activity is a factor not taken into consideration by the Sentencing Commission in drafting the Guidelines.... The Guidelines do not contemplate a scenario such as this where the appellants expect to exploit the criminal justice system and enjoy the fruits of their crime following a relatively short period of incarceration ... Neither Congress nor the Sentencing Commission would sanction such a result.

*Id.* at 631.

The above constitutes the findings of the Court with respect to the factual issues relevant to the sentencing of the defendant. The statements relating to possible upward departures are not binding conclusions, but are simply set forth for the guidance of counsel so that they may be addressed at the sentencing proceeding to take place on October 10, 1991.