**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry VALLE, Jorge Antonio Gochis,
Defendants–Appellants.**

No. 89–5780.

United States Court of Appeals,
Eleventh Circuit.

April 25, 1991.

William M. Norris, William M. Norris, P.A., Miami, Fla., for Gochis.

Anne Ruth Schultz and Linda Collins Hertz, Asst. U.S. Attys., and Frank Tamen, Miami, Fla., for plaintiff-appellee.

Before JOHNSON and BIRCH, Circuit Judges, and MERHIGE[1], Senior District Judge.

PER CURIAM:

Appellants Jerry Valle and Jorge Gochis pled guilty to an indictment which alleged that they had committed conspiracy to commit bank larceny in violation of 18 U.S.C. § 371, and bank larceny in violation of 18 U.S.C. § 2113(b). Subsequently, the appellants were sentenced pursuant to the United States Sentencing Guidelines. The sentences imposed by the district court, a total of fifteen years incarceration for each of

1. Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virgi- nia, sitting by designation.

the appellants, varied from the guideline range calculated in the presentence report. Both Valle and Gochis appeal, arguing that the district court relied on improper grounds for an upward departure, and that the extent of the departure was unreasonable. *See* 18 U.S.C. § 3742(a)(3). We disagree and affirm.

## I.

In November, 1988, appellant Jerry Valle was hired as an armored car guard by the Wells Fargo Armored Service Corp. This employment followed a pre-employment investigation.

On December 21, 1988, Valle was riding as one of the guards in a Wells Fargo armored car as it made pick-ups of currency and coins at various businesses in the Miami area. At one of their scheduled stops, Valle induced the regular driver to accompany the messenger into the bank, leaving Valle alone in the truck. Valle then drove away in the armored car. He rendezvoused with his cousin, co-conspirator and co-appellant Jorge Gochis, and removed the money from the truck. The two men then abandoned the empty truck and disappeared with approximately $1.7 million.

Appellants next surfaced in upstate New York, where they checked into a motel using false names and carrying eight to twelve suitcases filled with cash. Later, they returned to Miami and moved the suitcases into a rented warehouse.

Eventually, the Federal Bureau of Investigation caught up with the appellants in Puerto Rico. Gochis was promptly arrested at their apartment. Valle stalled the FBI until they forced their way inside and apprehended him as he was burning identification and bank documents.

Back in Miami, the FBI searched the warehouse which had been used by appellants to temporarily store the stolen money. However, all they found inside was a note which read "Suckers."

Total loss to the victim corporation was $1.7 million; as of the date of sentencing, approximately $50,000.00 has been recovered. This loss has had a direct impact on the victim corporation and many of its employees and officers. The company, a relatively modest-sized business, paid for the loss out of its own profits.

The appellants' guilty pleas were made without any plea agreement with the government.

After an investigation and preparation by the Department of Probation of a Presentence Investigation Report (PSI), a sentencing hearing occurred in which all parties were provided an opportunity to present evidence and assert their respective positions. The district court ruled on all objections, culminating in a guideline range for Valle of 37 to 46 months and for Gochis of 30 to 37 months imprisonment.

After reviewing the PSIs and considering the arguments of the parties, the district court, with good reason, determined that there existed aggravating circumstances of a kind and to a degree not adequately contemplated by the Sentencing Commission in formulating the Guidelines, specifically, the intent of the appellants not to return the money, but to serve their sentences at an ill-gotten monetary gain. While the amount of money stolen is not a ground for upward departure, the fact is that the defendants would effectively be envisioning jointly about twenty thousand dollars per month for each month of incarceration.[2] Accordingly, the district court sentenced each of the appellants to fifteen years of imprisonment, the statutory maximum. On appeal, as before the district court, appellants contend that an upward departure is improper because their crime did not involve circumstances not already taken into consideration by the Sentencing Guidelines. In addition, appellant Gochis argues that the extent of the departure

---

**2.** As stated supra, the maximum sentence under the Guidelines was, for Valle, 46 months and for Gochis, 37 months or a combined total of 83 months. The amount stolen was approximately $1.7 million—dividing that amount by 83 represents an amount of approximately $20,400 per month.

was unreasonable and an abuse of the court's discretion.

## II.

Under 18 U.S.C. § 3553(b), a court must impose a sentence within the range mandated by the Sentencing Guidelines "unless the court finds that there exists an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." In determining whether a factor was adequately taken into consideration, a court may consider only the Guidelines, policy statements, and official commentaries. *Id.*

■ Appellate review of upward departure cases involves the application of a three-step analysis. First, we must determine whether the Guidelines adequately consider a particular factor so as to preclude a district court from relying upon it as a basis for departure. *United States v. Shuman,* 902 F.2d 873, 875–76 (11th Cir. 1990). Over this question of law, we exercise de novo review. *United States v. Simmons,* 924 F.2d 187 (11th Cir.1991). If we determine that adequate consideration was not given to the circumstance, we must then decide whether consideration of the circumstance is consistent with the goals of the Sentencing Guidelines. *United States v. Shuman,* 902 F.2d 873, 875–76 (11th Cir.1990). Second, we must determine whether there exists sufficient factual support for the departure. *Id.; United States v. Asseff,* 917 F.2d 502, 505 (11th Cir.1990). This review requires evaluation of the district court's factual findings under the clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Simmons,* 924 F.2d 187 (11th Cir.1991). Finally, if the circumstance was properly taken into account, we must determine whether the extent of the departure from the guideline range was reasonable. *United States v. Shuman,* 902 F.2d 873, 875–76 (11th Cir.1990); 18 U.S.C. § 3742(e)(3). In this evaluation as well, we must "give due regard to the opportunity of the district court to judge the credibility of the witnesses ... and give[ ] due deference to the district court's application of the Guidelines to the facts." 18 U.S.C. § 3742(e); *see also United States v. Simmons,* 924 F.2d 187 (11th Cir.1991).

■ The district court in this case cited as an aggravating circumstance the appellants' willful refusal to turn over the proceeds of the theft. The court noted that "[d]efendants cannot usually expect to have the fruits of the crime waiting for them at the end of their prison time. They do not ordinarily expect to keep the proceeds of the crime." 716 F.Supp. 1452 at 1455. We agree with the district court that this willful, continuing scheme to profit from their illegal activity is a factor not taken into consideration by the Sentencing commission in drafting the Guidelines. Contrary to appellant's characterization, the quantity of the cash taken was not the motivation behind the upward departure. This would be an invalid basis for departure because the guideline governing theft explicitly provides for increasingly greater base offense levels, and hence increasingly greater punishment, depending on the value of the property stolen. *See* U.S.S.G. § 2B1.1; *accord United States v. Chiarelli,* 898 F.2d 373, 381 (3d Cir.1990) (where guideline governing receipt of stolen property provides increasing base offense levels depending on value of property received, enormous value of weapons received could not form basis for upward departure.) The unique factual characteristic which warrants departure in this case is the appellants' blatant flouting of the law. As the district court noted, the Guidelines do not contemplate a scenario such as this where the appellants expect to exploit the criminal justice system and enjoy the fruits of their crime following a relatively short period of incarceration. Indeed, for the reasons which follow, we are satisfied that neither the Congress nor the Sentencing Commission would sanction such a result. While under our system we take pride and comfort in the generally accepted view that justice is blind, that blindness, however, extends only to matters irrelevant to a

search for the truth. The instant defendants in this attempted ploy would appear to equate that hopeful view with a lack of rationality. Defendants' efforts to diminish the belief that crime does not pay must fail.

Because we have determined that there existed an aggravating circumstances not adequately taken into consideration in the Guidelines, we must determine, as we have, whether accounting for this circumstance is consistent with the goals of the Guidelines. Although the recent promulgation of the Sentencing Guidelines has focused the judiciary's attention on achieving greater uniformity and proportionality in sentencing, the broader goals of criminal sentencing remain intact. These include the provision of just punishment, deterrence of criminal conduct and promotion of respect for the law. *See* 18 U.S.C. § 3553(a); *United States v. Correa–Vargas*, 860 F.2d 35, 40 (2d Cir.1988) (Guidelines must be read flexibly to promote just punishment, respect for law and adequate deterrence).

All of these goals are served by the sentence imposed by the district court in the present case. People who engage in criminal conduct must not, and hopefully will not, be allowed to benefit from this conduct. To permit the appellants to keep the monetarily lucrative proceeds of their crime and yet serve no more prison time than if the money had been surrendered or otherwise recovered, would make a mockery of our system of justice. Three years of incarceration is surely more palatable if $1.7 million is anticipated upon release. The appellants, and others like them, would be encouraged under such a system to transform the rule of law into a cost/benefit analysis. The Guidelines were never intended to sanction such a result. Consequently, we conclude that the district court's consideration of the appellants' continued intent to retain the proceeds of the theft is consistent with the goals of the Guidelines.

■ Having determined that the district court properly considered the refusal to return proceeds of a theft as an aggravating circumstance, we must now determine

whether there exists sufficient factual support for the departure. Appellants suggest that the circumstantial evidence available is insufficient to prove, by a preponderance of the evidence, that they are aware of the present location of the money. *See United States v. Terzado–Madruga*, 897 F.2d 1099, 1125 (11th Cir.1990) (preponderance of evidence standard applicable to fact finding at sentencing). Bearing in mind that we are constrained from reversing factual findings except for clear error, we believe that adequate factual support did exist. This is not a situation, as was suggested by the appellants, where the district court was left to speculation. Nor do we believe the burden was improperly shifted to the appellants to disprove their knowledge. The uncontradicted evidence available at the time of sentencing was that the appellants had taken approximately $1.7 million dollars and moved it to several spots around the country. Upon their arrest, only $50,000.00 was discovered. When the police investigated the last known hiding place of the money, none was found. The presence of the note reading "Suckers" strongly implies that the appellants knew the police were on their trail and had hidden the money elsewhere. Finally, the fact that appellant Valle was burning bank records when arrested also suggests that at least some of the money is deposited in a bank account, within the appellant's de facto control. All of this taken together is more than sufficient to support the district court's conclusion that the appellants knew where the money was and were in control of it. To require the Government to provide direct evidence that appellants have not already spent the money or otherwise disposed of it, is too high a burden and not, in our opinion, mandated by the law or the circumstances. Finally, we must determine whether the departure from the applicable guideline range and the imposition of 180 months was reasonable. We begin by noting that 18 U.S.C. § 3742(e) requires appellate courts to "give due deference to the district court's application of the Guidelines to the facts." As we have previously stated, "[t]he district court is the front line of sentencing." *United States v. Collins*, 915

F.2d 618 (11th Cir.1990). Nevertheless, this court should determine whether the sentence imposed served " 'the factors to be considered in imposing a sentence,' generally,[3] and 'the reasons for the imposition of the particular sentence, as stated by the district court.' " *United States v. Diaz–Villafane,* 874 F.2d 43 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) (citing 18 U.S.C. § 3742(d)(3)). Although 180 months is a severe departure from the applicable range of 37 to 46 months for Valle and 30 to 37 months for Gochis, as heretofore stated, we believe the sentences are appropriate and even necessary to insure respect for the law and, more specifically, to see that our system of punishment retains its deterrent effect.[4]

The district court properly considered an aggravating factor not adequately accounted for in the Guidelines. Furthermore, the district court's departure, based on this factor, was, in our view, both reasonable and appropriate. Indeed, while we doubt the feasibility of drawing a bright line for the guidance of trial courts in considering a departure from the Guidelines, we suggest that any sentence called for under the Guidelines which is so disproportionate to the offense and the defendant's conduct as to blatantly depreciate respect for the law is a prime target for a more intense consideration of a departure.

### III.

For the foregoing reasons, we affirm the district court's judgment with respect to both Jerry Valle and Jorge Gochis.

AFFIRMED.

---

**3.** 18 U.S.C. § 3553(a) sets forth the factors to be considered in imposing sentence. They include the seriousness of the offense, deterrence, public protection, promotion of respect for the law, the indicated sentencing range under the Guidelines, policy statements of the Sentencing Commission, an avoidance of unwarranted disparities in sentencing.

**4.** Although the district court indicated that it would entertain a motion for reduction of sentence should the appellants experience a change of heart and turn over the money, such action would be beyond the court's jurisdiction. Fed. R.Crim.P. 35(b) allows for a correction of sentence only on motion of the Government, and then only to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution *of another person.*