15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America Plaintiff-Appellee,
v.
Carlo ORTIZ, Defendant-Appellant.
 No. 92-30364.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 1, 1993.
Decided Dec. 20, 1993.
 
 Before: WRIGHT, GOODWIN, and HUG, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Carlo Ortiz was convicted after a jury trial of conspiracy to commit wire fraud and money laundering in violation of 18 U.S.C. Sec. 371; wire fraud in violation of 18 U.S.C. Sec. 1343; and money laundering in violation of 18 U.S.C. Sec. 1956(a). Ortiz appeals his conviction and sentence. We affirm.
 
 
 3
 The evidence showed that Carlo Ortiz, along with his father, Alejandro Ortiz, and stepmother, Felicita Morales Ortiz, conspired to defraud several business associates and their clients by falsely representing that the Ortizes could acquire Mercedes-Benz and Ferrari automobiles at discount prices.
 
 
 4
 Richard Barney and his partner, Robert McDonald, owned McDonald Import Autos, Inc., which was in the business of brokering sales of exotic cars. In late 1987, Barney and McDonald were looking for a particular car for one of their clients, William Pennington, and were referred to Alejandro Ortiz. Barney and McDonald became friends with Alejandro Ortiz and had frequent business and social visits with Alejandro and his family over the next several months. The Ortiz family represented to Barney and McDonald that it had close ties to the chief executive officer of Daimler-Benz.
 
 
 5
 According to the Ortizes, Alejandro had been an intelligence officer for Franco in Spain during the Second World War and had befriended a young German soldier who later became the CEO of Daimler-Benz. Due to this friendship and the close relationship between the CEOs of Daimler-Benz and Fiat, Alejandro claimed that he was able to take advantage of bargain prices on Mercedes and Ferraris, in addition to lucrative stock options offered only to the automobile company executives.
 
 
 6
 Although Carlo conceded by stipulation that no such relationship ever existed, the testimony of government witnesses at trial showed that he had participated in many of these conversations, even claiming that he had once visited the Daimler-Benz chief executive at his chateau near Baden-Baden. The Ortizes arranged for Barney, McDonald and Pennington to take advantage of Alejandro's connection and purchase several Mercedes and Ferraris for their personal use at discounts of up to $40,000 each. Evidence at trial, however, showed that Carlo purchased these automobiles at full retail price in Southern California and falsely represented to Barney, McDonald and Pennington that the cars came from Europe by special arrangement.
 
 
 7
 By late 1988, Barney, McDonald and Pennington became convinced that the Ortiz connection was legitimate and entered into a business venture with the Ortizes. This deal consisted of McDonald Import Autos ordering 12 Ferraris and two Mercedes through Ortiz. Each of these cars was pre-sold to a third party who paid the entire purchase price in advance. A total of $1.6 million was wire-transferred to the Ortizes as a result of this venture.
 
 
 8
 A second venture involved a partnership formed by Barney, McDonald, a friend named John Scurry Smith, and the Ortizes to purchase 70 Mercedes. These Mercedes, known as "rollover" cars, were allegedly available at discount prices because previous buyers had defaulted on their purchases, forfeiting large deposits. The cars were to be bought on speculation for later resale, and Barney, McDonald and Smith contributed approximately $2.5 million towards the venture. Smith paid an additional $1 million to purchase discounted Daimler-Benz stock allegedly made available to Alejandro through his German friend.
 
 
 9
 These ventures were to be consummated in July 1989 in Madrid, Spain where Barney and Smith were to meet with Alejandro Ortiz and the Daimler-Benz chief executive. Barney and Smith waited for several days in Madrid, but Alejandro never appeared. Upon returning to Seattle, Barney and Smith discovered that the Ortizes' homes and businesses had been abandoned and all the money had been transferred out of the Ortizes' accounts.
 
 
 10
 In December 1990, Alejandro, Felicita and Carlo Ortiz were arrested in Switzerland. Carlo Ortiz was convicted after a jury trial. His father Alejandro committed suicide while in the custody of the Swiss authorities, and his stepmother Felicita pled guilty to conspiracy.
 
 
 11
 During the sentencing hearing, Carlo was assigned a base offense level of 23, to which seven points were added because the offense conduct involved more than $3.5 million. The district court adjusted the sentence upward two levels for obstruction of justice, and rejected Carlo's argument that, as a minor participant, he should get a two-level downward adjustment. The court then departed upward three levels based upon a finding that Carlo was flouting the law by resisting the recovery from Switzerland of assets that had been forfeited. The court sentenced Carlo to 200 months imprisonment, followed by five years' probation, and a $200,000 fine. He was ordered to pay restitution of $5.75 million, and to forfeit his assets pursuant to a separate forfeiture proceeding.
 
 I.
 
 12
 Carlo first argues that insufficient evidence was presented at trial to sustain his conviction. There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 13
 The essential elements of a conspiracy are "an agreement to accomplish an illegal objective coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." United States v. Melchor-Lopez, 627 F.2d 886, 890 (9th Cir.1980). The agreement necessary for a conspiracy need not be explicit, but may be inferred from the circumstances. Id. at 891. Once the existence of a conspiracy is established "evidence establishing beyond a reasonable doubt a connection of a defendant with a conspiracy, even though the connection is slight, is sufficient to convict [the defendant] with knowing participation in the conspiracy." Id. (emphasis in original) (quoting United States v. Dunn, 564 F.2d 348, 357 (9th Cir.1977)).
 
 
 14
 The evidence showed that Carlo Ortiz participated directly in the scheme by selling Barney, McDonald and Pennington personal cars at phoney discounts. Carlo himself purchased the automobiles from car dealerships in Southern California at full retail price, falsely explained to the fraud victims that the cars came directly from Europe by special arrangement, and touted what extraordinary deals the victims were getting.
 
 
 15
 The evidence also established Carlo's direct participation in the phoney plan to purchase 12 Ferraris and two Mercedes through McDonald Import Autos for third parties, by which the conspirators defrauded their victims of approximately $1.6 million. Carlo held himself out as responsible for the delivery of the cars, told victims that the cars were being shipped directly from Europe, and purported to investigate delivery delays by contacting the secretary of the CEO of Daimler-Benz.
 
 
 16
 Finally, evidence also connected Carlo with the partnership formed to purchase approximately 70 fictitious "rollover" Mercedes for later resale. Carlo had assured one of his father's partners, John Scurry Smith, that he was personally capable of carrying out the transaction if his father's health failed. In view of the foregoing, we find that there was sufficient evidence for the jury to have found Carlo guilty of the charged offenses, taking the evidence in the light most favorable to the prosecution.
 
 II.
 
 17
 Carlo next argues that the district court erred when it refused to issue subpoenas for out-of-district witnesses favorable to his defense. We review the district court's refusal to subpoena an out-of-district witness for an abuse of discretion. United States v. Smith, 924 F.2d 889, 894-897 (9th Cir.1991). Under the abuse of discretion standard, we cannot reverse the court below unless we have a definite and firm conviction, upon a weighing of the relevant factors, that it committed a clear error of judgment in the conclusion it reached. United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992).
 
 
 18
 Federal Rule of Criminal Procedure 17(b) provides that the
 
 
 19
 court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.
 
 
 20
 Fed.R.Crim.P. 17(b). The presence of a witness is "necessary to an adequate defense" within the meaning of Rule 17(b) if the testimony of the witness "would be relevant to any issue in the case." United States v. Sims, 637 F.2d 625, 627 (9th Cir.1980) (quoting Greenwell v. United States, 317 F.2d 108, 110 (D.C.Cir.1963)). The burden of proving necessity is on the defendant. Smith, 924 F.2d at 896.
 
 
 21
 None of the Rule 17(b) witnesses proposed by Carlo and denied by the district court could have rebutted the direct testimony of the prosecution's witnesses or the specific charges in the indictment. Carlo intended merely to have the witnesses testify that they dealt directly with his father and never with him in business dealings with the Ortiz family unrelated to the conspiracy, and that Alejandro Ortiz typically made all his own business decisions. The district judge's statement that the testimony of these witnesses would be analogous to "somebody coming and saying, I was in the bank, and I didn't see the bank robber," was an appropriate characterization of the proposed testimony.
 
 
 22
 We have stated that a district court may properly exclude testimony of Rule 17(b) witnesses if cumulative, or if the difficulty in obtaining a witness's testimony outweighs its usefulness. Smith, 924 F.2d at 896 (citing United States v. Henry, 560 F.2d 963, 965 (9th Cir.1977) and United States v. Rinchack, 820 F.2d 1557, 1568 (11th Cir.1987)). The Federal Rules of Evidence 402 and 403 give a trial judge broad discretion to exclude both irrelevant evidence and evidence of slight probative value. In view of the irrelevancy and low probative value of the proposed 17(b) testimony, we hold that the district court did not abuse its discretion in denying Carlo's request.
 
 III.
 
 23
 Carlo contends that he was denied his right under the Sixth Amendment to effective assistance of counsel. He bases this claim on the fact that the trial judge initially characterized the proposed defense witnesses as alibi witnesses and was going to disallow their testimony since defense counsel had failed to properly provide the government with a notice of alibi defense.
 
 
 24
 The trial judge, however, accepted defense counsel's argument that the proposed witnesses were not alibi witnesses, and allowed defense counsel to make an offer of proof regarding these witnesses at the end of the government's case. The court excluded the defense witnesses' testimony not because of a failure to provide notice of an alibi defense, but because the testimony was irrelevant. Specifically, the district court stated during the offer of proof: "But now it appears that they're not even alibi witnesses. And since now the government witnesses have testified, there's nothing to contradict by those [proposed defense] witnesses."
 
 
 25
 To prevail on an ineffective assistance of counsel claim, Carlo must show: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687-696 (1984). Counsel's representation is deficient if it "fell below an objective standard of reasonableness." Id. at 688. To show prejudice, a defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 
 
 26
 Carlo can show neither deficient performance nor prejudice. Although the testimony of the proposed Rule 17(b) witnesses was analogous to alibi testimony, it was not alibi testimony in the true sense. The testimony would not have placed Carlo away from the scene of the crime on any specific occasion. Instead, the testimony was aimed at rebutting any general inference the jury might make, from the government's evidence, that Carlo played any more than a minimal role in his father's automobile brokerage business. Thus defense counsel was warranted in not following the procedure required for the offering of alibi testimony.
 
 
 27
 Nonetheless, defense counsel's failure to provide notice of alibi witness was not prejudicial. The court allowed counsel to offer proof regarding these witnesses, and stated that if "it would appear that even remotely that the testimony of the witnesses that you have requested subpoenas of remotely are connected in this case, then I will issue [the subpoenas]." We find that the district court excluded the testimony because it was irrelevant, not because of any procedural bar.
 
 IV.
 
 28
 Carlo claims that the district court incorrectly calculated his guideline offense level. We review the district court's application of the "minor participant" adjustment of Sentencing Guideline Sec. 3B1.2(b) and the obstruction of justice adjustment of Sentencing Guideline Sec. 3C1.1 for "clear error," as the district court's undertaking is "necessarily rooted in the facts of the case." United States v. Torres-Rodriguez, 930 F.2d 1375, 1389 (9th Cir.1991).
 
 A.
 
 29
 Carlo first argues that the district court incorrectly applied the "obstruction of justice" enhancement. Guideline Section 3C1.1 allows for a sentence enhancement on the grounds that the defendant "willfully impeded or obstructed the administration of justice during the investigation or prosecution of the instant offense." U.S.S.G. Sec. 3C1.1. Carlo contends that the district court did not properly review the evidence and specify the facts supporting this two point adjustment in Carlo's sentence based on his perjury at trial.
 
 
 30
 The Supreme Court has recently upheld the application of Sec. 3C1.1 in the case of perjury at trial. United States v. Dunnigan, 113 S.Ct. 1111, 1113 (1993). If a defendant objects to a
 
 
 31
 sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out.... When doing so it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.
 
 
 32
 Id. at 1117. A witness testifying under oath commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Id. at 1116.
 
 
 33
 The sentencing court found that "[t]here is no question about it.... [Carlo] obstructed justice by his testimony. He lied, flat-out lied." In addition, the court adopted the prosecutor's summary of the specific facts of Carlo's perjury. Carlo categorically denied making any of the representations that the numerous victims of the fraud scheme testified that he had made. Specifically, he denied ever having told these victims that the exotic cars his father was brokering came directly from Europe, or that his family had a special relationship with the CEO of Daimler-Benz. He also testified that the millions of dollars deposited in Swiss bank accounts were the result of his legitimate business selling American products in Mexico. This statement was clearly contradicted by the weight of the evidence.
 
 
 34
 We hold that the district court's determination that Carlo perjured himself is supported by specific findings and is not clearly erroneous.
 
 B.
 
 35
 Carlo also claims that the district court erred in refusing to reduce his offense level for minor participation in the offense. Sentencing Guideline Sec. 3B1.2(b) provides for a two-point reduction "[i]f the defendant was a minor participant in any criminal activity." The defendant has the burden of proving that he was a minor participant entitled to this adjustment. United States v. Howard, 894 F.2d 1085, 1090 n. 4 (9th Cir.1990). The district court found that the evidence showed Carlo Ortiz was "a major participant, and probably might have been the brains behind [the scheme]."
 
 
 36
 Carlo argues, however, that the Sentencing Reform Act, 18 U.S.C. Sec. 3553(a)(6), requires that similarly-situated defendants be treated alike. Carlo's stepmother was given a two point reduction in her offense level for minor participation as part of her plea agreement; Carlo asserts that his participation was comparable to that of his stepmother, and that he also is entitled to a two point reduction.
 
 
 37
 The district court expressly found that the level of participation of the two conspirators was not comparable. The court stated that it did not "think [Carlo's stepmother] had brains enough to do it. I think she was used by [Alejandro and Carlo Ortiz]." We cannot say that the district court's finding was clearly erroneous.
 
 V.
 
 38
 Carlo's final claim is that the district court erred in departing upward three points from the guideline offense level to impose a sentence of 200 months imprisonment. The district court departed upward by three offense levels based on its finding that defendant "flouted the law" by continuing to resist the recovery from Switzerland of $2.5 million in assets adjudged to be forfeited in this case. Carlo argues that he was not flouting the law, but rather pursuing his rights in another country's legal system not to forfeit his assets.
 
 
 39
 We review an upward departure from the Guideline offense level in three steps. United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991). Whether the grounds relied upon by the district court provide a basis for departure is reviewed de novo. The factual findings supporting the existence of the identified circumstances are reviewed for clear error. The degree of departure is reviewed for "reasonableness" in light of the standards and policies incorporated in the Sentencing Reform Act, 18 U.S.C. Sec. 3553, and the Sentencing Guidelines. Id. at 747-751. Carlo disputes the grounds relied upon by the district court for departure.
 
 
 40
 The district court relied upon United States v. Valle, 929 F.2d 629 (11th Cir.), cert. denied, 112 S.Ct. 401 (1991), and its reasoning to authorize a three point departure for "flouting the law." In United States v. Valle, the defendant bank robbers willfully refused to turn over the proceeds of a $1.7 million theft. The Eleventh Circuit upheld the district court's determination that the defendants' "blatant flouting of the law" was "an aggravating circumstance not adequately taken into consideration in the Guidelines" that warranted upward departure. Id. at 631-632; accord United States v. Bryser, 954 F.2d 79, 89-90 (2d Cir.), cert. denied, 112 S.Ct. 2939 (1992) ("We do not believe the jail cell should be a way station on the road to ill-gotten gains.").
 
 
 41
 Carlo chose not to contest the legality of the forfeiture order in this country, and is clearly not complying with that order. The goals of the Sentencing Guidelines are to promote just punishment, respect for the law and adequate deterrence. Valle, 929 F.2d at 632 (citing United States v. Correa-Vargas, 860 F.2d 35, 40 (2d Cir.1988)). We believe that the goals of just punishment and adequate deterrence are served by upholding the sentencing court's upward departure. To permit Carlo "to keep the lucrative proceeds of [his] crime and yet serve no more prison time than if the money had been surrendered or otherwise recovered" would encourage Carlo and others like him "to transform the rule of law into a cost/benefit analysis." Valle, 929 F.2d at 632.
 
 
 42
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3