[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15919
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20416-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LOURDES MORA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 4, 2017)

Before TJOFLAT, HULL, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Appellant Lourdes Mora was sentenced to 108 months' imprisonment for her part in a Medicare fraud scheme. The government filed a motion requesting a sentence reduction based on her substantial assistance, pursuant to Federal Rule of Criminal Procedure 35(b). The district court granted the Rule 35(b) motion in part. For the reasons explained below, we vacate the district court's order and remand for further proceedings.

## I.  BACKGROUND

### A.    The Guilty Plea

During 2008 to 2010, Mora was a licensed mental-health counselor working as a therapist at three community mental-health centers (the "Clinics") in Florida. These Clinics purported to provide services to people suffering from mental illness, but in reality, most patients did not qualify for and/or did not receive services. Mora and her co-conspirators fabricated patient records, submitted $68 million in false and fraudulent claims to Medicare, and were paid $27 million for the claims.

In 2015, Mora pled guilty to one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. Mora's plea agreement provided that the government could move for a sentence reduction under Rule 35(b) if the

government determined that Mora's cooperation merited such a motion. [1]  A

magistrate judge recommended that the district court accept Mora's guilty plea.

## B.    The PSI and Sentencing

Mora's presentence investigation report ("PSI") assigned her a total offense

level of 31 and a criminal history category of I, yielding an advisory guidelines

range of 108 to 120 months' imprisonment, which reflected the ten-year statutory

maximum cap.  The district court sentenced Mora to 108 months' imprisonment.

## C.    First Two Rule 35 Motions

In 2016, the government filed a Rule 35(b) motion based on Mora's

substantial assistance requesting a 40 percent sentence reduction.  The district

court denied the motion as premature.  Later in 2016, the government filed a

renewed Rule 35(b) motion, and the district court again denied it, determining that

it was "insufficient" because it failed to set out any facts about Mora's substantial

assistance.

## D.    Second Renewed Rule 35 Motion

Subsequently, the government filed a second renewed Rule 35 motion,

reiterating its prior request for a 40 percent reduction, to 64 months' imprisonment.

This time, the government's motion provided more details about Mora's

substantial assistance.  In its motion, the government stated that: (1) Mora had

---

[1]Although Mora's written plea agreement contained an appeal waiver, the government has not sought to enforce that waiver in this case.  Therefore, we will not address it further.

3

begun cooperating with authorities "when she was first interviewed in connection with this case several years ago"; (2) Mora "was subsequently debriefed on numerous occasions by agents, providing them with information on her actions as well as those of her co-conspirators"; (3) Mora agreed to plead guilty before she was even charged and "continued her cooperation through to the conclusion of the cases against several of her co-conspirators"; and (4) had her co-conspirators proceeded to trial, Mora would have been a "key witness" for the government and would have provided first-hand testimony about the operation of the Clinics.

The government's motion also stated that Mora would have testified about how her co-conspirators "organized the creation of false patient therapy notes at the Clinics, which notes did not reflect the actual conditions of the patients or the therapy the patients purported[ly] received." After reviewing files with government investigators, Mora explained (1) "how the false notes were drafted using templates and by copying information from prior notes written for other patients" and (2) how she and other therapists paid one of her co-conspirators to "orchestrat[e]" the drafting of these false notes.

In its motion, the government outlined the sentences of co-conspirators Erik Alonso, the clinical director for two Clinics, and Cristina Alonso, a therapist. Erik Alonso was sentenced to 60 months' imprisonment, which was later reduced to 40 months' imprisonment through a Rule 35(b) motion. Cristina Alonso was

4

sentenced to 28 months' imprisonment, similarly later reduced to 18 months' imprisonment.[2]

### E.    Mora's Response to the Second Renewed Rule 35 Motion

Mora's response to the government's motion requested a 65 percent reduction down to a 38-month sentence.  As to her assistance, Mora stressed that: (1) she was the first conspirator to cooperate with law enforcement "and she did so long before she was ever charged with a crime"; (2) she kept silent about her cooperation, allowing law enforcement to complete its investigation and bring charges against her co-conspirators; and (3) she was ready and willing to testify against her co-conspirators had their cases gone to trial.

Mora asserted that her requested 38-month sentence: (1) would place her sentence "just below that of Mr. [Erik] Alonso, her supervisor, . . . [who] had significantly more criminal culpability and significantly less cooperation with the government" and who ultimately received a 40-month sentence; (2) would take into account the nature and circumstances of the offense, her crime-free history, and the seriousness of the offense; and (3) would deter others.  Because she was

---

[2]While Mora alone was prosecuted in this case, No. 1:15-cr-20416-JLK-1, this Medicare fraud conspiracy was prosecuted in other cases before two other district court judges.  Other co-conspirators were: (1) Santiago Borges, the owner/operator of two Clinics, who was sentenced to 120 months' imprisonment; (2) Damian Mayol, a patient recruiter, who was sentenced to 60 months' imprisonment; and (3) Osnier Pupo, another patient recruiter, who was sentenced to 27 months' imprisonment.  In April 2016, another district court judge granted the government's Rule 35 motions and reduced Borges's sentence from 120 to 96 months, Erik Alonso's sentence from 60 to 40 months, and Cristina Alonso's sentence from 28 to 18 months.

not "predisposed to ever commit another crime," there was no need to protect the public from her. She argued that her 108-month sentence was "driven by the huge dollar amount of the fraud," which she did not design and from which she did not financially benefit.

**F.    The Hearing on the Operative Rule 35 Motion and the Government's Factual Proffer about Mora's Substantial Assistance**

In July 2016, the district court held a hearing on the government's second renewed Rule 35 motion. The district court asked if the parties wanted to call any witnesses. The government and Mora declined. The district court noted that, without additional testimony, the record consisted of the PSI, the PSI final addendum, and the government's motion, which "point[ed] out very few facts." The district court stated that if the parties were "satisfied with the status of the record, then I will hear from you."

In response, the government proffered more details about Mora's cooperation. The government proffered that: (1) Mora provided substantial assistance by cooperating with law enforcement well before any charges were filed against her or anyone else in the case; (2) Mora was interviewed in 2012, and her co-conspirators were indicted in 2015; (3) Mora was debriefed at various times following her initial interview and agreed in 2015 to plead guilty; (4) although all of Mora's co-conspirators but one eventually pled guilty, Mora stood ready to assist during the prosecution of the cases against them; (5) Mora likely would have

6

been called as a witness had the cases gone to trial; and (6) Mora was of "critical importance" to the investigation, providing information about the Clinics' operation and the purported therapy of the patients.

In response to questioning by the district court, the government acknowledged that Mora did not testify in the single case that went to trial because that defendant was not involved on the clinical side of operations where Mora worked, but that Mora was prepared by defense counsel if the government decided to call her. The government stated that Mora's early cooperation was important to the indictments and that, without her assistance, it was "not sure if the case could have been brought." The government stated that Mora provided names of clinic employees who fabricated patient notes, even though no charges were brought against them.

Through counsel, Mora stressed that: (1) she cooperated with the government years before anyone was charged; (2) she never alerted her co-conspirators to the investigation; and (3) she never received anything other than her annual salary of $30,000 for her participation in the scheme, and she even returned part of that to her co-conspirators.

The district court interjected, saying that the government "made a mess of this case" by failing to charge the defendants in a single indictment and, instead, "scattering it around the court" among judges with differing sentencing

philosophies.  To that point, Mora argued that her requested reduction was proper because she was the most cooperative defendant and the least involved in the criminal activity.

The district court stated that Mora was "simply talking about fairness, that's all."  Mora agreed and noted her medical problems, but the district court stated that Mora's poor health was considered at sentencing when she received a sentence at the low end of the advisory guidelines range.  The court further stated that, under Rule 35(b), "those factors [were] outside the framework of our focus" and that cooperation was the only factor that could be assessed.

Given that five other co-conspirators were prosecuted in two other cases before two other district court judges, the district court explained that the "difficulty" with Mora's Rule 35(b) motion resided in the differing sentencing philosophies among the various judges, which resulted in Mora's co-conspirators receiving lower sentences than the 108-month sentence she received.  The district court explained that it disliked being "put in the position of having to go with the lowest common denominator and work down.  I am telling you and your client that I do understand your fairness argument.  I don't seriously disagree with you at all."

Mora argued that the government should have requested a reduction commensurate with her role in the conspiracy in light of the sentences handed down by the other judges.  But the district court indicated that any attempt to use

Rule 35(b) to bring Mora's sentence in line with those other sentences went "against the guiding principles of sentencing."

The district court noted that this type of Medicare fraud could justify a 50-year sentence, but that Mora's co-conspirators got sentences of 96, 60, 40, and 18 months; sentences that were, in the district court's view, "bizarre" and "ridiculous." The district court stated that:

> The operative pleading on a Rule 35, if the government is going to file them, they ought to have a detailed analysis of the cooperation, what it was worth, what it did, how it helped them. I had to struggle and pull out teeth to get to the third one here. I thought denying it would give everybody a clue as to what we were looking for, what we needed in this case. In any event, we got it.

Mora informed the district court that the case agent was in court and could testify if the district court needed more information about Mora's assistance. The district court stated that it accepted the credibility of what the government's attorney had said.

The district court then noted that a combined 241 months of incarceration for five other defendants in a $68 million fraud was a "pathetic result" and noted that, although Mora cooperated immediately, she knew about the fraud and could have been a whistle-blower at any time. The district court stated that it would take the matter under advisement and "try to do what [it could] do."

## G.    The District Court's Written Order

On August 25, 2016, the district court entered a written order granting the government's Rule 35(b) motion in part and reducing Mora's sentence from 108 months to 84 months' imprisonment. The district court wrote that the operative Rule 35 motion "set[] forth factual allegations related to [Mora's] assistance." But the district court then stated: (1) no evidence was appended to the motion, and (2) neither party called any witnesses or sought to admit any evidence into the record at the hearing.

The district court made two rulings. First, although the district court said it could not consider factors other than a defendant's substantial assistance, it determined that the government had offered no evidence or witness testimony to substantiate its factual allegations of substantial assistance, writing that "[t]here is no record upon which the Court might rely to make findings related to [Mora's] substantial assistance."

The district court chided the parties for merely offering proffered facts, writing: "[W]hen the Court invited the parties to present witnesses to offer testimony relating to [Mora's] substantial assistance, the parties declined to present any witnesses. Rather than present any witnesses or admit any evidence during the hearing, the parties simply made argument in support of the motion through counsel." The district court then wrote: "In the context of a Rule 35 proceeding,

10

the Court is the fact finder, but the Court must have evidence upon which to rely to make findings of fact.  In this matter, there are none."

Second, while not a model of clarity, the district court appeared to reduce Mora's sentence based not on her substantial assistance, but to remove prejudice to Mora from the different sentencing policies of various district court judges, writing:

> The defense "fairness to the Defendant" argument is the only factor upon which the Court has any ground upon which it could possibly rely.  The Court has concluded that the differences in the Sentencing policies of the several decisions of Court should not be, and is not a problem over which the Defendant has any control or over which she should be prejudiced.  Accordingly, it is
>     **ORDERED, ADJUDGED**, and **DECREED** that the Government's Second Renewed Motion for a Rule 35 Reduction . . . be, and the same is, hereby **GRANTED IN PART.**

Mora timely appealed.[3]

## II.  JURISDICTION

We must first determine whether we have jurisdiction over Mora's appeal.[4] United States v. Hays, 515 U.S. 737, 742, 115 S. Ct. 2431, 2435 (1995) (explaining that federal courts have an "independent obligation" to examine their own

---

[3]Mora also moved for reconsideration of the district court's order, which the district court denied.  On appeal, Mora does not contest the district court's denial of her motion for reconsideration.

[4]After Mora appealed, this Court issued a Jurisdictional Question asking the parties to "[a]ddress whether and to what extent this Court has jurisdiction over this appeal, which concerns the district court's partial grant of the government's motion for reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure."  The parties filed responses, and this Court carried the issue with the case.

11

jurisdiction).  We review our jurisdiction de novo.  United States v. Lopez, 562 F.3d 1309, 1311 (11th Cir. 2009).

Upon motion by the government, a district court may reduce a sentence if the defendant provided substantial assistance.  Fed. R. Crim. P. 35(b).  We view a district court's ruling on a Rule 35(b) motion as an "otherwise final sentence" and have held that such rulings are governed by 18 U.S.C. § 3742.  United States v. Manella, 86 F.3d 201, 202-03 (11th Cir. 1996) (per curiam).  Section 3742(a)(1) allows a defendant to appeal an otherwise final sentence if the sentence was "imposed in violation of law."  18 U.S.C. § 3742(a)(1).

In Manella, this Court noted that "[a] district court's decision to grant or deny a Rule 35(b) motion is a discretionary one from which an appeal generally will not lie under § 3742," and that a defendant may not challenge the merits of the determination or the extent of the reduction.  86 F.3d at 203.  However, this Court does have jurisdiction to hear a challenge that the district court misapplied Rule 35(b), because that is an argument that the sentence was imposed in violation of the law.  Id. at 203-04.  We review de novo whether the district court has imposed a sentence in violation of the law.  Id. at 203.

Mora argues that the district court erred as a matter of law: (1) by failing to accept the government's factual proffer regarding Mora's substantial assistance; (2) by not allowing testimony by the case agent (present at the hearing) to testify;

12

and (3) by refusing to consider certain factors, such as the "glaring sentencing disparities" between her sentence and those of her co-conspirators. Because these are arguments of legal error, this Court has jurisdiction to consider them. See id. We now turn to Mora's arguments on appeal.

### III.  DISCUSSION

### A.    Whether the Government's Proffer Was Sufficient

The first issue is whether the district court erred by concluding that there was no evidence of Mora's substantial assistance. This was legal error because both the government and Mora made an undisputed factual proffer in their written submissions and in their oral presentations at the hearing. As Mora pointed out to the district court, the case agent was in court and could have testified. The district court then specifically declined to hear testimony from the case agent, stating that the government attorney's proffer was credible. And, when stating that getting facts had been like "pull[ing] out teeth" in this case, the district court ultimately represented that "[i]n any event, we got it."

Under these factual circumstances, both parties could, and did, reasonably believe that the undisputed factual proffer was sufficient to constitute evidence of Mora's cooperation and assistance. See United States v. Hernandez, 34 F.3d 998, 1000 n.6 (11th Cir. 1994) (per curiam); see also United States v. Viera, __ F. App'x __, 2017 WL 2180933, at *2 (11th Cir. May 17, 2017) (unpublished) (per

13

curiam) (holding that the government's Rule 35 motion and the defendant's written response "sufficed to satisfy any requirement as to the district court's knowledge"); United States v. Dukharan, 228 F. App'x 877, 878 (11th Cir. 2007) (unpublished) (per curiam) (noting that "[n]o testimony was offered, but both parties made proffers regarding the extent of [the defendant's] cooperation and involvement in drug smuggling activities").

Because the district court's failure to entertain the undisputed factual proffer as evidence was legal error, we vacate and remand on that issue. Nothing herein suggests the Rule 35(b) reduction given here was too little or too much, or what it should be. All we say is that the district court erred in not considering the undisputed factual proffer as evidence of Mora's substantial assistance and remand for the district court to consider that proffer as evidence.

## B.    Rule 35(b) Factors

Although agreeing about the factual proffer, the parties dispute what factors a district court may consider in granting a Rule 35(b) motion. We address that issue.

This Court has held that a district court may reduce a sentence under Rule 35(b) "only to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person," and not on the basis of other factors. United States v. Chavarria-Herrara, 15 F.3d 1033, 1037 (11th Cir. 1994)

(quoting United States v. Valle, 929 F.2d 629, 633 n.4 (11th Cir. 1991)).

Subsequently, this Court repeated that: "[T]he only factor that may militate in

favor of a Rule 35(b) reduction is the defendant's substantial assistance." Manella,

86 F.3d at 204. However, in Manella this Court clarified that "[n]othing in the text

of the rule purports to limit what factors may militate against granting a Rule 35(b)

reduction." Id.

Instructive here, this Court in Manella upheld the district court's seven-

month reduction—which fell far short of the government's requested sixty-month

reduction—where the district court weighed several factors listed in 18 U.S.C.

§ 3553(a) against the defendant's substantial assistance, such as the seriousness of

the offense and the need for the sentence to promote respect for the law and

provide just punishment. Id. at 202, 205.

In its order here, the district court said that the "'fairness to the Defendant'

argument is the only factor upon which the Court has any ground upon which it

could possibly rely" because there was no record evidence of Mora's substantial

assistance. We reject Mora's claim that the district court on remand may still use

"fairness to the Defendant"—whether fairness is defined as remedying the

differences wrought by various judges' sentencing policies or as a proxy for

sentencing disparities—as the sole factor warranting a sentence reduction under

Rule 35(b). While a court may deny or limit the size of a sentence reduction based

15

on its consideration of factors other than the defendant's substantial assistance, it may only <u>award</u> a reduction on the basis of the defendant's substantial assistance. See <u>Manella</u>, 86 F.3d at 204 ("[T]he <u>only</u> factor that may militate <u>in favor of</u> a Rule 35(b) reduction is the defendant's substantial assistance.") (first emphasis added);  <u>Chavarria-Herrara</u>, 15 F.3d at 1037.

We also reject Mora's argument that the 2002 amendments to Rule 35 abrogated this Court's holdings in <u>Chavarria-Herrara</u> and <u>Manella</u>.  It is true that the language of Rule 35(b) was slightly altered in 2002, but the Advisory Committee Notes indicate that the 2002 amendments were "intended to be stylistic only."[5]  Fed. R. Crim. P. 35 advisory committee's notes to 2002 amendment. Thus, the 2002 amendments did not substantially undermine or overrule our precedents in <u>Chavarria-Herrara</u> and <u>Manella</u>.  Similarly, Mora's reliance on the Ninth Circuit's decision in <u>United States v. Tadio</u>, 663 F.3d 1042, 1043 (9th Cir. 2011) (holding that Rule 35's current language allows for consideration of other factors when reducing a sentence) is not availing because our circuit precedents in <u>Chavarria-Herrara</u> and <u>Manella</u> remain binding on us.

## IV.  CONCLUSION

---

[5]Prior to the 2002 amendments, Rule 35(b) provided that, upon motion by the government, the district court "may reduce a sentence <u>to reflect</u>" a defendant's substantial assistance.  Fed. R. Crim. P. 35(b) (1998) (emphasis added).  After the amendments, the rule provided that a district court "may reduce a sentence <u>if</u> the defendant, after sentencing, provided substantial assistance."  Fed. R. Crim. P. 35(b) (2016) (emphasis added).

Accordingly, we VACATE the district court's order and REMAND the case for reconsideration of the government's second renewed Rule 35(b) motion.  On remand, the district court shall consider the information of Mora's substantial assistance contained in the government's factual proffer in determining whether and to what extent Mora's sentence should be reduced under Rule 35(b).

**VACATED AND REMANDED.**